IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SANDRA HUGHES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:04CV00632 |
| | ) |
| UNUMPROVIDENT CORPORATION, | ) |
| UNUM LIFE INSURANCE COMPANY | ) |
| OF AMERICA, PROVIDENT LIFE & | ) |
| ACCIDENT INS. CO., and PROVIDENT | ) |
| LIFE & CASUALTY INS. CO., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

**Sharp, Magistrate Judge**

This matter comes before the Court on (1) a motion for summary judgment filed by Defendants UnumProvident Corporation ("UnumProvident"), Unum Life Insurance Company of America ("Unum Life"), Provident Life & Accident Insurance Company ("Provident"), and Provident Life & Casualty Insurance Company ("Provident Casualty") (collectively, "Provident" or "Defendants") (Pleading No. 22); (2) Plaintiff Sandra Hughes' ("Hughes") motion for summary judgment on Defendants' counterclaim (Pleading No. 27); (3) Plaintiff Hughes' motion to amend complaint (Pleading No. 30); and (4) Defendants'

motion to strike Plaintiff's affidavit (Pleading No. 31). The motions have been fully briefed and are ready for a ruling.[1]

## Procedural History

Plaintiff Hughes filed this action in North Carolina Superior Court, Forsyth County, on May 10, 2004, alleging improper denial of life insurance proceeds. Provident issued the policies sometime in the mid-1980's through a program with Hughes' employer, North Carolina Baptist Hospital ("the Hospital"). (Pleading No. 1, Compl. & Am. Compl. attached to Defs.' Notice of Removal.) Plaintiff served the complaint on the Defendants on June 11, 2004. *Id.*

Defendants timely removed the action to federal court, alleging federal question and supplemental jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. (Pleading No. 1.) Defendants contend that Plaintiff's claims are governed by the Employment Retirement Income Security Act ("ERISA"), which preempts all state law claims asserted in the complaint. *Id.* On August 13, 2004, Defendants answered the Complaint, generally denying the allegations of the complaint. (Pleading No. 8, Answer.) On August 26, 2004, Defendants amended their Answer to assert a counterclaim seeking restitution of $5,000 allegedly paid twice on one of the three insurance policies at issue. (Pleading No. 11, Amended Answer.)

---

[1]Defendants offer an affidavit establishing, and Plaintiff does not contest, that the proper party defendant to this action is Provident Life and Accident Insurance Company. (Pleading No. 26, Affidavit. of Robert B. Plybon ("Plybon Aff.").)

## Statement of Facts

In the early to mid-1980's, the Hospital and Provident worked together to implement a life insurance program for hospital employees. (Pleading No. 26, Plybon Aff. ¶ 2.) Provident agreed to issue individual policies on the lives of hospital employees and the lives of their eligible dependents without evidence of insurability, in exchange for the Hospital's publicizing the program and performing certain other functions. *Id.* ¶ 3. Premiums were funded by payroll deductions, with the aggregate premium paid by the Hospital each month. *Id.* ¶ 5. As a condition of the program, Provident required the Hospital to advise each of its employees of the option of participating in the program and to maintain records confirming that notice had been provided. *Id.* ¶ 6. The Hospital publicized the program through promotional literature, such as pay envelope inserts, and arranged for group meetings at which the program was explained to new employees. *Id.* ¶ 7. The Hospital also assisted in the submission of claims on the policies. *Id.* In approximately 1990, the Hospital decided to discontinue the program. *Id.* ¶ 8.

Sandra Hughes, an employee of the Hospital during the relevant time period, obtained various policies through the program, insuring both her life and the life of her son, Steven Harvey. (Pleading No. 29, Affidavit of Sandra Hughes ("Hughes Aff.") ¶ 2.) Three policies are at issue in these proceedings: (1) Policy No. 08D1513007, which had a death benefit of $15,780; (2) Policy No. 08D4533219, which had a death benefit of $5,000 under a "child rider" to Plaintiff's policy; and (3) Policy No. 08D1490809, which had a death benefit of

$16,507. *Id.* ¶ 8; Pleading No. 23, Defs.' Br. in Supp. of Mot. for Summ. J., at. 3; Pleading No. 25, Affidavit of Caryn Pillsbury ("Pillsbury Aff.") ¶¶ 2-3.

Sometime in 2001, Plaintiff Hughes inquired with Provident regarding benefits she claimed entitlement to in connection with the 1993 death of her son, Steven Harvey. (Pleading No. 24, Affidavit of David Veilleux ("Veilleux Aff.") ¶ 3.) Provident sent Hughes a letter with a claim form, and she returned the claim form with a death certificate on or about May 14, 2001. *Id.* Ex. A at 00002-00004. Due to the passage of time, Provident no longer had the claim files or cancelled checks that would reflect payment on the policies and had to reconstruct the claim history as best it could. (Pillsbury Aff. ¶¶ 3, 5.) The claims handler processing Hughes' 2001 inquiry determined (inaccurately, according to later discoveries, Defendants assert) that Hughes was entitled to $5,000 under policy 08D4533219, and issued a check for that amount in or around mid-May 2001. (Veilleux Aff., Ex. A at 00039.) Provident advised Hughes that it was still reviewing the potential applicability of policy 08D1513007. *Id.* at 00088.

On June 6, 2001, after making the $5,000 payment, Provident located in its records a copy of an IRS form 1099, which specifically referenced policy 08D4533219 and documented payment of $260.57 in interest to Plaintiff in 1993. *Id.* at 00081, 00099; Pillsbury Aff. ¶ 5a. Based on this evidence, Provident concluded that it had already paid on policy 08D4533219 in 1993 and had mistakenly duplicated that payment in May 2001. Pillsbury Aff. ¶ 8. Provident also located computer records related to policy 08D1513007.

*Id.* at 00074, 00078; Pillsbury Aff. ¶ 5, Exs. C, D. Those records contain certain codes that Provident claims specialist Caryn Pillsbury interprets in her affidavit. (Pillsbury Aff.) According to Ms. Pillsbury, the codes indicate that a claim was made in 1993 under policy 08D1513007 and that the claim was either paid in 1993 or lapsed prior to Plaintiff's inquiry in 2001. *Id.* ¶¶ 5b, c. Provident also located an imaged copy of a premium refund check dated October 4, 1993 to Ms. Hughes on policy 08D1513007, consistent with a return of premiums for the period after Mr. Harvey's death. *Id.* ¶ 5d, Ex. E. According to Ms. Pillsbury, payment of this sum is consistent with a scenario in which Provident paid on all three policies, with the highest numbered policy being the only one reflected on the refund check.

Based on its review of available computer records, Provident denied Plaintiff's claim on policy 08D1513007 by letter dated June 20, 2001. (Veilleux Aff., Ex. A at 00068-00069.) The letter advised Hughes of her right to appeal that decision, and she did so on August 21, 2001. *Id.* at 00054. By letter dated September 19, 2001, Mr. Veilleux advised Ms. Hughes that due to the amount of time that had passed between her son's death in 1993 and her inquiry in 2001, the company's records were inadequate to determine whether the claim was payable, and that the available information indicated that the claim had been paid or the policy had lapsed. *Id.* at 00047. A series of letters between Plaintiff's counsel and Provident followed, culminating in this litigation.

After Hughes commenced this litigation, discovery revealed a copy of a claim submitted by Hughes in 1993, dated September 13, 1993 and mailed by the Hospital to Provident on September 15, 1993. (Pillsbury Aff. ¶ 4, Ex. A.) This form identified policy 08D1490809, which Provident had not yet researched. *Id.* Provident then located computer records and imaged documents for policy 08D1490809, which were similar to those located for policy 08D1513007. (Pillsbury Aff. ¶ 6, Ex. F.) Reviewing those records, Ms. Pillsbury opines that the codes reflect payment in 1993 or subsequent lapse of policy 08D1490809. *Id.* ¶ 6.

Hughes admits that she submitted a claim on all three policies in 1993. (Pleading No. 29, Hughes Aff. ¶ 6.) However, she denies that her claims were resolved in 1993 and contends that the matter "escaped her mind" until 2001, when her employer made some changes in its insurance program. *Id.* ¶¶ 9-12.

**Discussion**

**I.      Provident's Motion for Summary Judgment**

Defendant Provident moves for summary judgment on grounds that Plaintiff's claims, governed by the Employee Retirement Income Security Act ("ERISA"), are barred by the applicable three-year statute of limitations. Plaintiff Hughes opposes the motion on grounds that ERISA does not govern her claims, the claims did not accrue until 2001, and/or the statute of limitations was equitably tolled by Provident's conduct.

A party is entitled to judgment as a matter of law upon a showing that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The material facts are those identified by controlling law as essential elements of claims asserted by the parties. A genuine issue as to such facts exists if the evidence forecast is sufficient for a reasonable trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

When the moving party has carried its burden, the nonmoving party must come forward with evidence showing more than some "metaphysical doubt" that genuine and material factual issues exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), *cert. denied,* 481 U.S. 1029 (1987). A mere scintilla of evidence is insufficient to circumvent summary judgment. *Anderson*, 477 U.S. at 252. Instead, the nonmoving party must convince the court that, upon the record taken as a whole, a rational trier of fact could find for the nonmoving party. *Id*. at 248-49. Trial is unnecessary if "the facts are undisputed, or if disputed, the dispute is of no consequence to the dispositive question." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993).

The threshold issue the Court must address is whether Plaintiff's claims are governed by ERISA. ERISA preempts state laws and provides the exclusive remedy for actions relating to any employee benefit plan. 29 U.S.C. §§ 1001, 1144(a); *Madonia v. Blue Cross*

*& Blue Shield of Virginia*, 11 F.3d 444, 446 (4th Cir. 1993). Under ERISA, an "employee welfare benefit plan" is defined to include "any plan, fund or program [that is]. . . established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . benefits in the event of . . . death." 29 U.S.C. § 1002(1). Hughes concedes that the relevant plan involved death benefits payable under an insurance policy offered through the Hospital, but maintains that the plan in this case falls within ERISA's safe harbor exception, removing it from coverage under ERISA.

ERISA's safe harbor provision provides in pertinent part that the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization under which (1) no contributions are made by an employer or employee organization; (2) participation in the program is completely voluntary for employees or members; (3) the sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and remit them to the insurer; and (4) the employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs. 29 C.F.R. § 2510.3-1(j). Provident

maintains that the Hospital exceeded the limited employer role outlined in the safe harbor exception and that ERISA therefore applies to this plan.

The Fourth Circuit has followed other circuits in construing the safe harbor exception very narrowly, finding that even the slightest "additional" functions performed by an employer in connection with a plan will trigger application of, and preemption of state claims by, ERISA. *See Casselman v. American Family Life Assurance Co. of Columbus*, Nos. 04-2370, 04-2378, 2005 WL 1492208, at *2-3 (4th Cir. 2005) (unpublished) *(citing Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1213 (11th Cir. 1999); *Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 977 (5th Cir. 1991)); *see also Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 417-418 (4th Cir. 1993). Here, the uncontroverted admissible evidence[2] shows that the Hospital and Provident worked together to establish the program in question, only Hospital employees were eligible for the benefits provided under the program, the Hospital publicized the program extensively, the Hospital assisted employees in the claims process, and the Hospital made the decision to end the program in 2001. (Plybon Aff. ¶¶ 2-8.) This Court concludes that the employer here exceeded the bounds of permissible interaction with

---

[2] Plaintiff's affidavit testimony that "[i]t was [her] understanding" that the hospital did not contribute to the plan, her participation was voluntary, the hospital's role was simply to collect and remit the premiums, and the hospital received no profit from the plan, is insufficient to create a genuine issue of fact precluding summary judgment on this issue. (Hughes Aff. ¶ 3.) Plaintiff lacks personal knowledge of the employer's role. Moreover, elsewhere in her affidavit she indicates that her "employer significantly helped [her] submit the paperwork [in 1993]." (Hughes Aff. ¶ 6.)

the program, that the safe harbor exception does not apply, and that Plaintiff's claims are governed by ERISA.

Having determined that Plaintiff's claims are governed by ERISA, the Court must determine whether Plaintiff's claims are timely. ERISA provides no express limitation period for bringing a private cause of action for denial of benefits under 29 U.S.C. § 1132(a)(1)(B). *Dameron v. Sinai Hospital of Baltimore, Inc.*, 815 F.2d 975, 981 (4th Cir. 1987). In such circumstances, the federal courts look to state law for an analogous limitation provision to apply. *See Wilson v. Garcia*, 471 U.S. 261 (1985). The claim in this case is for denial of benefits under a life insurance policy and is analogous to a breach of contract action. *Shofer v. Hack Co.*, 970 F.2d 1316, 1319 (4th Cir. 1992). The limitation period for contract actions under North Carolina law is three years from the date of the alleged breach. N.C. Gen. Stat. § 1-52(1); *Wise v. Dallas & Mavis Forwarding Co.*, 753 F. Supp. 601, 606 (W.D.N.C. 1991).

Plaintiff Hughes contends that her suit is timely because she filed the action within three years of Provident's September 2001 denial of her claim under policy nos. 08D1513007 and 08D1490809. On the other hand, Provident maintains that Plaintiff's claim for denial of benefits payable in connection with the 1993 death of her son accrued long before 2001, and that her inquiry in May 2001 did not revive those claims, in spite of good faith efforts by Provident to respond to her inquiry. The Court finds that Provident has correctly argued the law. The evidence shows that Hughes made a claim under all three

-10-

Case 1:04-cv-00632-PTS   Document 36   Filed 01/10/06   Page 10 of 19

policies on or about September 15, 1993. The resolution of those claims is not entirely clear, given the passage of eight years before Hughes remembered the claim and inquired with Provident. A claimant cannot avoid application of a statute of limitations merely by making inquiry, long after claims records and cancelled checks are no longer available; to permit a claimant to do so would extend the limitations period indefinitely. *See Payne v. Blue Cross & Blue Shield of Virginia*, No. 91-2583, 1992 WL 235537, at *3 (4th Cir. 1992) (unpublished).

Provident has advanced evidence that it paid on all three policies in 1993. Hughes attempts to controvert that evidence by filing an affidavit in which she testifies that "[t]he claims for the insurance at issue were never paid nor denied until much later." ( Hughes Aff. ¶ 9.)[3] She further testifies, and admits in her brief, that she was not in her right mind for a good while after her son's death and that the claim for $37,000 escaped her mind for eight years. *Id.* ¶ 7, Pleading No. 28, Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., at 2. The Court finds that Hughes' affidavit is not competent evidence to defeat summary judgment on the issue of whether the claim was paid or denied in 1993 or 1994.

Regardless of whether Provident paid or did not pay on the policies in 1993, the uncontroverted evidence shows that Plaintiff submitted her claim on September 15, 1993. Typically, a claim for benefits accrues under ERISA when the claim is formally denied *or*

---

[3]Provident moves to strike portions of Hughes' affidavit. *See* Pleading No. 31. For the reasons discussed in this ruling, that motion is granted in part, as indicated in connection with discrete issues herein.

-11-

when, in the absence of a formal claim, the plaintiff knew or should have known she would be entitled to benefits. *See Rodriguez v. MEBA Pension Trust*, 872 F.2d 69, 72 (4th Cir. 1989) (claim accrues when denied); *Cotter v. Eastern Conferemce of Teamsters Ret. Plan*, 898 F.2d 424, 428-29 (4th Cir. 1990) (when no formal claim is made, cause of action accrues when plaintiff should have become aware as to whether or not they would be entitled to benefits). The problem in this case is that so much time has passed since Plaintiff's original claim in 1993 that it is nearly impossible to determine precisely how the claim was resolved. Even accepting Hughes' assertion that Provident did not inform her until 2001 that it was denying the resubmitted claim, the regulations implementing ERISA establish certain time periods for exhausting administrative remedies prior to filing suit. These regulatory periods are relevant to this Court's determination of when the claim accrued for purposes of filing suit, due to the absence of clear evidence establishing denial in 1993. Under the regulations, a plan administrator's decision on a claim for benefits must be made within 180 days after receipt of the claim by the plan; if no decision is made during that time, the claim is deemed denied. *See* 29 C.F.R. § 2560.503-1(e). The claimant then has 60 days to seek review of the decision. *See* 29 C.F.R. § 2560.503-1(g). Absent a decision within 120 days of the plan's receipt of a request for review, the claim is deemed denied on review. 29 C.F.R. § 2560.503-1(h)(4).[4] Even assuming Provident took no action whatsoever following Hughes'

---

[4] The pertinent regulation was amended in 2000, effective January 1, 2002. *See* 65 Fed. Reg. 70,246 (Nov. 21, 2000). Because Plaintiff's claim was filed prior to 2002, the preexisting regulation controls in this case.

-12-

filing of a claim in 1993, that claim would have been "deemed" formally denied within approximately 300 days after it was filed, sometime in 1994. The statute of limitations for filing a lawsuit would have run sometime in 1997, long before Hughes remembered in 2001 to ask about how the claim was resolved.

The only way Hughes' 1993 claim could have remained alive in the eight years after she filed it is if, between 1993 and 2001, Provident somehow lulled Hughes into thinking that she did not have to file a lawsuit, or if Provident has somehow waived its right to invoke the statute of limitations defense. Hughes argues that Provident has made conflicting representations concerning her entitlement to benefits under "the Five Thousand Dollar policy" and is therefore estopped from relying on the statute of limitations. (Pl.'s Br. in Opp'n, at 8.) As a general rule, a defendant will be estopped from relying on a statute of limitations defense only when the defendant has made some misrepresentation or engaged in other misconduct that has reasonably caused the plaintiff not to file suit within the applicable limitations period. *See Heckler v. Cmty. Help Servs. of Crawford County, Inc.*, 467 U.S. 51, 59 (1984); *Olson v. Mobil Oil Corp.*, 904 F.2d 198, 201 (4th Cir. 1990). This is a narrow doctrine, as "[c]ourts cannot countenance ad hoc litigation for every missed deadline. The repose that statutes of limitations provide will be lost if their applicability is 'up for grabs' in every case." *Id.* (citations omitted).

Hughes fails to point to evidence creating a triable issue on her equitable estoppel argument. She relies on actions taken by Provident in 2001, when, due to her inability to

remember how her 1993 claim had been resolved, she inquired with Provident. But by this time, the statute of limitations had long run, as discussed previously. There is no competent evidence suggesting that between 1993 and 2001, Provident did anything to lull Hughes into believing that the claim would not lapse. Hughes admits that the matter escaped her mind. Instead of establishing a basis for a trier of fact to find misconduct by Provident, Plaintiff's evidence suggests that the difficulties she faces in prosecuting this litigation are utterly independent of Provident. Provident is not estopped from invoking the statute of limitations defense.

Hughes also argues that by paying the $5,000 in 2001, Provident waived its statute of limitations defense. According to the doctrine of waiver, a person may waive practically any right he has unless forbidden by law or public policy. *See J.W. Cross Indus. Inc. v. Warner Hardware Co.*, 94 N.C. App. 184, 186, 379 S.E.2d 649, 650 (1989). The essential elements of waiver are the existence at the time of the alleged waiver of a right, advantage or benefit, the knowledge of the existence of that right, advantage or benefit, and an intention to relinquish such right, advantage or benefit. *Id.* While Provident's 2001 investigation and attempts to reconstruct the claim history for the relevant policies did not amount to waiver of its statute of limitations defense, payment of the $5,000 under policy 08D4533219 presents a closer question, at least with respect to that policy. Construing the evidence in the light most favorable to Plaintiff, there is sufficient evidence of waiver to defeat summary judgment on Hughes' claim for benefits under policy 08D4533219. It being

-14-

undisputed, however, that Provident has paid that claim, all that remains pending is Defendant's counterclaim for return of the $5,000.

For these reasons, the Court finds from the uncontroverted evidence that Plaintiff Hughes' claims under policy 08D1513007 and policy 08D1490809 are time-barred, and the Court will grant Defendant Provident's motion for summary judgment dismissing Plaintiff's claim for benefits under those two policies.

## II.  Hughes' Motion for Summary Judgment

On August 3, 2005, Plaintiff Hughes filed a cross-motion for summary judgment on Provident's counterclaim. (Pleading No. 27.) Provident argues that the motion is untimely because the deadline for filing dispositive motions was July 15, 2005. (Pleading Nos. 15, 19, 35.) However, the Court may *sua sponte* rule on a motion for summary judgment when, searching the record, such a ruling is appropriate. *See Celotex*, 477 U.S. at 326. Ruling on Plaintiff's cross-motion for summary judgment is appropriate where, as here, the parties have had ample opportunity to brief the issue and the issue before the Court is a straightforward, discrete legal issue.

Provident seeks to recover $5,000 it alleges it erroneously paid on policy 08D4533219 in 2001. (Pleading No. 11.) Provident alleges that after paying this amount to Hughes in May 2001, it later discovered evidence suggesting that it had already paid on the policy in 1993. *Id.* Provident cites *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985 (4th Cir. 1990) as recognizing a federal common law remedy for unjust enrichment

-15-

in ERISA cases. As Provident concedes, however, a recent panel of the Fourth Circuit questioned the propriety of such a claim and read the *Waller* decision to permit an unjust enrichment cause of action only in very narrow factual circumstances. *See Provident Life & Accident Ins. Co. v. Cohen*, Nos. 04-1270, 04-1386, 2005 WL 2063854, at *9-11 (4th Cir. Aug. 29, 2005) (holding that failure of ERISA to recognize remedy meant that remedy did not exist, in absence of plan language specifically providing for return of monies erroneously paid under plan). In *Cohen*, the Fourth Circuit refused to recognize a federal common law remedy for unjust enrichment where, unlike in *Waller*, the plan did not expressly provide for repayment of monies improperly advanced to a claimant. *Id. at* *11.

Provident has not alleged any plan language that mandates return of monies erroneously paid as benefits. Neither has it pointed to evidence of such plan language. Under the law of this Circuit, Provident fails to state a claim for unjust enrichment and, after sufficient time for discovery, has failed to point to evidence supporting such a claim. Plaintiff Hughes is entitled to summary judgment dismissing the counterclaim.

### III. Hughes' Motion to Amend Complaint

Hughes seeks leave to amend her Complaint to add claims for breach of fiduciary duty under ERISA and to clarify that she seeks recovery of benefits under all three policies. (Pleading No. 30.) Provident opposes this motion to the extent that Hughes seeks to allege a breach of fiduciary duty, on grounds that the motion is untimely and would be futile. (Pleading No. 33.)

-16-

Hughes' motion is untimely under the terms of the parties' Joint Rule 26(f) Order, which set December 31, 2004 as the deadline for motions to amend. (Pleading No. 15.) Rule 15(a) of the Federal Rules of Civil Procedure permits liberal amendment of pleadings when justice so requires. Fed. R. Civ. P. 15(a) (2005). A party seeking amendment from the court need not file a supporting brief under the Local Rules, but must "state good cause" for the amendment." L.R 7.3(j). When a motion to amend is inexplicably and unjustifiably delayed, and the claims sought to be added likely would not survive a motion to dismiss, the Court may, in its discretion, deny leave to amend. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999).

Hughes offers no explanation for her delay in seeking to amend the Complaint, such as the discovery of new evidence supporting the claims or a change in the applicable law. The only apparent reason for the amendment is to circumvent Provident's motion for summary judgment. Even if Hughes were able to offer some credible reason for now adding claims of which she knew or should have known early in this litigation, the apparent futility of the claims further weighs against allowing the amendment. Hughes has not submitted a proposed amended complaint, but instead asks the Court to "convert" the previously asserted claims to claims for breach of fiduciary duty, based on the same general factual allegations contained in the Complaint. (Pleading No. 30.)

The factual allegations of Plaintiff's Complaint do not support a claim for breach of fiduciary duty as opposed to a claim for benefits. There is no automatic "alternative" claim
-17-

for breach of fiduciary duty in the event that a Plaintiff's claim for benefits fails. *See Dwyer v, Metropolitan Life Ins. Co.*, No. 00-1514, 2001 WL 94749 (4th Cir. 2001) (unpublished). Hughes does not allege who the fiduciary was under the terms of the plan, whether she seeks relief on her own behalf or for the plan, how the duties were breached, or the appropriate remedy for the alleged breach. In her brief, Hughes offers as examples of potential breaches of fiduciary duty Defendants'

1. Improperly [c]hanging the matter at issue from one of whether or not Ms Hughes had actually been paid to one in which the defendants are attempting to find relief on a technical legal basis, rather than whether or not the money is owed Ms Hughes,

2. Changing their defenses in this matter from the administrative appeals process to the litigation of the federal claim,

3. Either misrepresenting dual payments on a policy, or misrepresenting non-payment on any other policies,

4. Delinquent notice of the third policy of insurance notwithstanding the Plaintiff's inquiry,

5. Filing a counterclaim for improper purposes,

6. Otherwise improperly failing to pay the Plaintiff money due to her for inappropriate reasons and rationale, and

7. Any other impropriety that has since come to light

(Pleading No. 30, Mot. to Amend at 1-2.) Even taken in the light most favorable to the Plaintiff, none of these allegations supports a cause of action for breach of fiduciary duty under ERISA. To allow Hughes to amend the Complaint on the grounds urged would be futile.

For the foregoing reasons, Hughes' motion to amend (Pleading No. 30) will be denied.

**Conclusion**

For the reasons stated above, **IT IS HEREBY ORDERED** that Defendant Provident's motion for summary judgment (Pleading No. 22) is **GRANTED** with respect to Plaintiff Hughes' ERISA claims for benefits under policies 08D1513007 and 08D1490809 and that the claims under those policies are **DISMISSED**. **IT IS FURTHER ORDERED** that Plaintiff Hughes' motion for summary judgment (Pleading No. 27) is **GRANTED** as to policy 08D4533219. **IT IS FURTHER ORDERED** that Plaintiff Hughes' motion to amend (Pleading No. 30) is **DENIED**. **IT IS FURTHER ORDERED** that Defendants' Motion to Strike Plaintiff's Affidavit (Pleading No. 31) is **GRANTED IN PART** as discussed herein.

A separate judgment will be entered contemporaneously with this Memorandum Opinion and Order.

                                        /s/ P. Trevor Sharp
                                       United States Magistrate Judge

Date: January 10, 2006